CHARLES R. JONES, Judge.
liThe Appellant, Gulf Tran, Inc., seeks review of a district court judgment granting the summary judgment of Appellee, Elevating Boats, LLC, and ordering Gulf Tran to indemnify and defend third party plaintiffs, Elevating Boats, LLC and Jack-up Boat Service, LLC. We reverse.
Statement of Facts
This action arises out of a personal injury sustained by James Tye Poole while he was aboard the L/B Mammoth Elevator a/k/a M/V Mammoth Elevator (hereinafter referred to as “Elevator”), a lift boat. Poole sustained injuries when he fell from an unsecured wood platform located in the vessel’s lavatory. At the time, Poole was employed by Dynamic Industries (hereinafter referred to as “Dynamic”).
Mr. Poole filed suit against Elevating Boats, LLC (hereinafter referred to as “Elevating Boats”) as the owner of the vessel alleging negligence and unseaworthiness. Mr. Poole later amended his suit to state that Elevating Boats and/or Jack-up Boat Service, LLC (hereinafter referred to as “Jackup”) were the owners and operators of the Elevator.
| ^Elevating Boats subsequently filed a third-party demand against Gulf Tran, Inc. (hereinafter referred to as “Gulf Tran”)— the broker that Dynamic used to procure the Elevator for an offshore construction job. Elevating Boats subsequently filed a Motion for Summary Judgment requesting that Gulf Tran be ordered to defend and indemnify Elevating Boats. The district court granted the Motion for Summary Judgment from which Gulf Tran filed the instant appeal.
Assignments of Error
Gulf Tran asserts that the district court erred in the following respects: (1) ordering Gulf Tran to provide a defense to Elevating Boats before the underlying lawsuit is concluded and defense costs are paid; (2) failing to recognize that material facts were in dispute as to which of the two contracts executed between Gulf Tran and Elevating Boats governed the transaction regarding Elevator; (3) failing to recognize that a material fact was in dispute as to whether the vessel in question was unseaworthy prior to the commencement *677 of the charter and to consider whether its unseaworthiness would vitiate the indemnity agreement; (4) failing to recognize that a material fact was in dispute as to whether Gulf Tran has a duty to indemnify Elevating Boats pursuant to the terms of the Blanket Charter agreement executed between the parties; and (5) failing to recognize that a material fact was in dispute as to whether the indemnity coverage extended to third persons, such as Mr. Poole.
Discussion
On review of a summary judgment, the appellate court considers the matter de novo. Doerr v. Mobil Oil Corp., 00-947, p. 27 (La.12/19/00), 774 So.2d 119, 136. Further, the reviewing court “asks the same questions as does the district court in ^^determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law.” Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750.
Considering that a finding of the existence of a genuine issue of material fact would render a discussion of Gulf Tran’s obligation to defend and indemnify Elevating Boats moot, we will first discuss whether any genuine issue of material fact exists.
Gulf Tran alleges that Elevator was chartered by Dynamic, for whom Gulf Tran was acting as an agent. Gulf Tran further asserts that it did not exercise the traditional roles and functions of a charterer because it did not exercise any control over Elevator. Therefore, Gulf Tran contends that it is not bound by the terms of the Blanket Charter Agreement.
There were two agreements that Gulf Tran and Elevating Boats entered into: 1.) a Brokerage Agreement and 2.) a Blanket Charter Agreement (hereinafter referred to as the “charter”). Gulf Tran contends that only the terms of the Brokerage Agreement apply.
The indemnity clause of the Brokerage Agreement, which was executed in May of 2000, states as follows:
4. With respect to work performed hereunder, vessel operator agrees to indemnify and hold harmless Gulf Tran, Inc. against any and all claims, demands, liens or suits including, but not limited to claims, demands or suits form punitive damages, consequential damages, property damage, personal injury ... including, but not limited to any claims by any employee, master, crew of vessel operator or any party for whom Gulf Tran may be working, whether occasioned, brought about, or caused by, arising out of, or resulting from the unseaworthiness of vessels.
|4The charter agreement, dated September 10, 2003, states that Elevating Boats is the owner of Elevator and that Gulf Tran is the charterer. The applicable indemnity clause of the charter states as follows:
16. CHARTERER INDEMNITY
CHARTERER shall hold harmless, protect defend and indemnify OWNER, its officers, directors, agents, employees and joint or co-ventures from and against every claim, demand, damage, cause of action, suit or other litigation, without limit and without regard to the cause or causes thereof or the fault of any party, on account of or stemming from every instance of death or bodily injury to the persons of, or loss or damage to the vessel or other property of: CHARTERER; its employees; agents; lessor; contractors and their employees, agents, and lessor; subcontractors, and their employees, agents and lessor; invitees; and every other person and com *678 pany caused to be aboard or attached to vessel by CHARTERER or by any person or company attributed above to CHARTERER, even though such death, injury, loss or damage be caused by the fault of OWNER or by those whose fault is imputed to the OWNER ...
In Ray v. Global Industries, Ltd., 2006 WL 305964 (W.D.La.), the Western District Court of Louisiana was faced with a similar issue in a factually analogous case. In Ray, the plaintiff filed suit for injuries he sustained while traversing a gangway between a vessel and a platform. At the time of the incident, plaintiff was an employee of Downhole Energy Services (“Downhole”). The vessel in question was owned by Global Industries Ltd. (“Global”), and the platform was owned and operated by J.M. Huber Corporation (“Huber”).
Plaintiff filed suit against Global and Huber, as well as other defendants. Global filed a third party demand against Kevin Gros Consulting and Marine | (¡Services, Inc. (“Gros”), seeking defense and indemnification pursuant to a general Master Time Charter agreement Global and Gros had executed.
Gros filed a Motion for Summary Judgment against Global asserting that it did not owe a defense and indemnification under the time charter agreement because Gros was only acting as a boat broker with respect to the vessel. The Western District Court denied the motion for summary judgment. The court reasoned that in order for the company to have access to Global’s boats, the charter agreement had to be in place. The Western District Court further explained:
To accept Kevin Gros Consulting’s argument, would cause the Charter Agreement to have no effect at all. That was not the intent of the parties. The Charter Agreement clearly states that Kevin Gros Consulting is the Charterer and that the Charterer will indemnify and defend the Owner, Global. There is a complete absence of language that states that someone else other than Kevin Gros Consulting shall indemnify and defend Global. The Charter Agreement and its provisions are applicable.
Ray, 2006 WL 305964, p. 2 (W.D.La.).
Similarly, this Court refuses to accept Gulf Tran’s assertion that it was merely acting as a boat broker. The charter agreement solely identifies Gulf Tran as the charterer and there is an absence of language identifying any other party as having the obligation of indemnifying Elevating Boats. Furthermore, without the execution of the charter agreement, neither Gulf Tran nor Dynamic would have had access to the vessels belonging to Elevating Boats. Therefore, we recognize that Gulf Tran is the proper party bound by the terms of the time charter it entered into with Elevating Boats.
This Court further notes that within the first paragraph of the charter agreement it states that “[tjhis Agreement shall be in effect upon the signing of [fiboth CHARTERER and OWNER, and this agreement shall supersede any previous agreement, contract or charter between CHARTERER and OWNER.” (emphasis added).
Due to the fact that Gulf Tran — the “charterer” of the vessel as identified in the charter — and Elevating Boats executed the charter after the Brokerage Agreement was signed, the teivns of the Brokerage Agreement were nullified by the terms of the charter. The district court, therefore, did not err in determining that the previously executed Brokerage Agreement *679 was not applicable to the instant dispute.[1]
In its next assignment of error, Gulf Tran asserts that there is a genuine issue of material fact as to whether Elevator was unseaworthy prior to it being chartered. Gulf Tran also contends that the district court failed to consider whether Elevator’s unseaworthiness would vitiate the indemnity agreement.
Gulf Tran contends that it was the unseaworthiness of the vessel that caused plaintiffs injury. Gulf Tran avers that owners have been held directly liable for the unseaworthiness of vessels under Federal Law. D/S Ove Skou v. Hebert, 365 F.2d 341 (5th Cir.1966).
The owner of a vessel has a duty to furnish a seaworthy vessel. This duty is absolute and nondelegable. Foster v. Destin Trading Corporation, 96-0803 (La.5/30/97), 700 So.2d 199, 209 (citing Florida Fuels, Inc. v. Citgo Petroleum Corp., 6 F.3d 330, 332 (5th Cir.1993)). It extends to a defective condition of the ship, its equipment, or appurtenances. Id. (citing Phillips v. Western Co. of North America, 953 F.2d 923, 928 (5th Cir.1992)). “Liability for an unseaworthy condition does 17not depend on negligence, fault or blame. Thus, if an owner does not provide a seaworthy vessel, then no amount of prudence will excuse him, whether he knew of or should have known of the unseaworthy condition.” Id. at 202 (citing T.J. Schoenbaum, Admiralty and Maritime Law, Second Edition § 6-26 (1994)).
Nevertheless, the United States Court of Appeals for the Fifth Circuit has recognized the validity of indemnity agreements that reheve an indemnitee of liability for his or her own negligence; yet, the “[l]ong — established general principles of interpreting indemnity agreements require that indemnification for an indemnitee’s own negligence be clearly and unequivocally expressed.” Seal Offshore, Inc. v. American Standard, Inc., 736 F.2d 1078, 1081 (5th Cir.1984). With regard to indemnification, the Fifth Circuit has further rationalized:
A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage. Thus, for example, it is widely held that a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms.
Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 333 (5th Cir.1981).
In the instant case, the charterer’s indemnification clause states that the charterer is responsible “even though such death, injury, loss or damage be caused by the fault of OWNER or by those whose fault is imputed to the OWNER ...” As the Louisiana Supreme Court explained in Foster, “fault” is distinct from “unseaworthiness.” We also note that the indemnity clause does not reference the |sterm “unseaworthiness.” Thus, it is not clear to this Court that the charter agreement expressed in clear and unequivocal terms that Elevating Boats and Jack Up Boat Service are entitled to indemnification for unseaworthiness claims because a statement to that effect is noticeably absent *680 from the indemnity clause. Therefore, we find that a genuine issue of material fact exists as to whether Elevating Boats and Jackup Boat Service are entitled to defense and indemnification for Poole’s claim of unseaworthiness.
Lastly, we pretermit discussion of the remaining assignments of error because a determination that any genuine issue of material fact exists is sufficient to deny a motion for summary judgment.
Decree
The judgment of the district court is reversed as our de novo review indicates that a genuine issue of material fact exists. This matter is hereby remanded to the district court.
REVERSED and REMANDED

. Paragraph 29 of the Blanket Charter Agreement is an arbitration clause. There is no evidence in the record that the instant dispute was ever submitted to arbitration.